**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.

RICHEMONT INTERNATIONAL SA,

      Plaintiff,

vs.

THE INDIVIDUALS, BUSINESS ENTITIES,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

      Defendants.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Richemont International SA ("Plaintiff"),[1] hereby sues Defendants, the Individuals, Business Entities, and Unincorporated Associations identified on Schedule "A" hereto (collectively "Defendants"). Defendants are promoting, advertising, offering for sale, selling, and/or distributing goods bearing and/or using counterfeits and confusingly similar imitations of Plaintiff's trademarks within this district through various Internet based e-commerce stores operating under the seller names set forth on Schedule "A" (the "E-commerce Store Names"). In support of its claims, Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1. This is an action for damages and injunctive relief for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law. Accordingly, this Court has subject

---

[1] Plaintiff is a subsidiary of Compagnie Financière Richemont SA, which is one of the world's leading luxury goods groups.

matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.    Defendants are subject to personal jurisdiction in this district because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this district through, at least, e-commerce stores accessible and doing business in Florida and operating under their E-commerce Store Names. Alternatively, based on their overall contacts with the United States, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

3.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, non-residents in the United States and engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling, and/or shipping infringing products into this district.

## THE PLAINTIFF

4.    Plaintiff, Richemont International SA, is a public limited company organized and existing under the laws of Switzerland, having its principal place of business at 10 Route des Biches, Villars-sur-Glane, Fribourg, Switzerland. Plaintiff's Maisons include, *inter alia*, Cartier, IWC Schaffhausen, Panerai, Vacheron Constantin, and Van Cleef & Arpels.

5.    Plaintiff operates boutiques throughout the world, including within this district. Plaintiff is engaged in the business of manufacturing and distributing throughout the world,

including within this district, a variety of high-quality goods under multiple world-famous common law and federally registered trademarks, including those set forth below. Plaintiff offers for sale and sells its trademarked goods within the State of Florida, including this district, through its boutiques, at prestigious retailers, and via the Internet on its own websites. Defendants, through the advertising, offering for sale, and sale of counterfeit and infringing versions of Plaintiff's branded products are directly and unfairly competing with Plaintiff's economic interests in the United States, including the State of Florida, and causing Plaintiff irreparable harm and damage within this jurisdiction.

6. Like many other famous trademark owners, Plaintiff suffers ongoing daily and sustained violations of its trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Plaintiff's trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their e-commerce stores. The natural and intended byproduct of Defendants' combined actions is the erosion and destruction of the goodwill associated with Plaintiff's name and associated trademarks and the destruction of the legitimate market sector in which it operates.

7. To combat the indivisible harm caused by the concurrent actions of Defendants and others engaging in similar conduct, each year Plaintiff expends significant monetary resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement. The exponential growth of counterfeiting over the Internet, including through online marketplace and social media platforms, has created an environment that requires companies, such as Plaintiff, to expend significant resources across a wide spectrum of efforts to protect both consumers and itself from confusion and erosion of the goodwill embodied in Plaintiff's brand.

**THE DEFENDANTS**

8.   Defendants are individuals, business entities of unknown makeup, or unincorporated associations each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to consumers as well as shipping and fulfillment centers, warehouses, and/or storage facilities within the United States to redistribute their products from those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants target their business activities toward consumers throughout the United States, including within this district, through the simultaneous operation of, at least, their commercial Internet based e-commerce stores under the E-commerce Store Names.

9.   Defendants operate under the E-commerce Store Names in tandem with electronic communication via private messaging applications and/or services, thereby creating an interconnected ecosystem which functions as an online marketplace operation.

10.   Upon information and belief, Defendants use aliases in conjunction with the operation of their businesses.

11.   Defendants are the past and/or present controlling forces behind the sale of products bearing and/or using counterfeits and infringements of Plaintiff's trademarks as described herein.

12.   Defendants directly engage in unfair competition with Plaintiff by advertising, offering for sale, and/or selling goods each bearing and/or using counterfeits and infringements of one or more of Plaintiff's trademarks to consumers within the United States and this district through e-commerce stores using, at least, the E-commerce Store Names, as well as additional e-commerce store or seller identification aliases not yet known to Plaintiff. Defendants have

4

purposefully directed some portion of their unlawful activities toward consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing versions of Plaintiff's branded goods into the State.

13.     Defendants have registered, established or purchased, and maintained their E-commerce Store Names. Defendants may have engaged in fraudulent conduct with respect to the registration or maintenance of the E-commerce Store Names by providing false and/or misleading information to the relevant e-commerce platforms where they offer to sell and/or sell.

14.     Defendants will likely continue to register or acquire new e-commerce store names or other aliases, as well as related payment accounts, for the purpose of offering for sale and/or selling goods bearing and/or using counterfeit and confusingly similar imitations of one or more of Plaintiff's trademarks unless preliminarily and permanently enjoined.

15.     Defendants' E-commerce Store Names, associated payment accounts, and any other alias e-commerce store or seller identification names used in connection with the sale of counterfeit and infringing goods bearing and/or using one or more of Plaintiff's trademarks are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiff. Moreover, Defendants are using Plaintiff's famous names and/or trademarks to drive Internet consumer traffic to at least one of their e-commerce stores operating under the E-commerce Store Names, thereby increasing the value of the E-commerce Store Names and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

## COMMON FACTUAL ALLEGATIONS

### Plaintiff's Business and Trademark Rights

16.     Plaintiff is the owner of all rights, title, and interest in and to the following

trademarks, which are valid and registered on the Principal Register of the United States Patent

and Trademark Office (the "Plaintiff's Marks"):

**Cartier Trademarks**

| Registered Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| CARTIER | 0,411,239 | January 9, 1945 | IC 014 - Precious-Metal Ware-namely, the following articles made, in whole or in part, of Precious Metals or Plated With the Same; Jewel Boxes, Fobs, Bracelets, Watch Bracelets And Buckles Therefore, not including Watches, Cuff Links, Brooches, Earrings, Eyeglass Cases, Cigarette Lighters, Ash Trays, Envelope Openers, Wallets, Money Clips, Perfume Bottles, Desk Sets, Handbags, Key Chains, Finger Rings. |
| *Cartier* | 0,411,240 | January 9, 1945 | IC 014 - Articles of Jewelry for Personal Wear and for Precious-Metal Ware-Namely, the Following Articles Made, in Whole or in Part, of Precious Metals or Plated with the Same-- viz, Jewel Boxes, Fobs, Bracelets, Watch Bracelets and Buckles Therefor, Not Including Watches, Cuff Links, Brooches, Earrings, Eyeglass Cases, Cigarette Lighters, Ash Trays, Envelope Openers, Wallets, Money Clips, Perfume Bottles, Desk Sets, Handbags, Key Chains, Finger Rings |
| *Cartier* | 0,411,975 | February 13, 1945 | IC 014 - Watches and Clocks and Wrist Watches with Wrist Straps and Bracelets Attached for Securing the Same on the Wrist of the Wearer, and Traveling Clocks and Watches with Covers of Leather, Fabric and the Like for Protecting Them While Traveling |
| CARTIER | 0,759,201 | October 29, 1963 | IC 014 - Watches and Clocks |
| TANK | 1,006,321 | March 11, 1975 | IC 014 - Watches |

| | 1,308,000 | December 04, 1984 | IC 016 - Pens, Articles of Stationery- Namely, Writing Paper, Envelopes, Cards, Address Books, Diaries, and Memorandum Books |
|---|---|---|---|
| SANTOS | 1,344,284 | June 25, 1985 | IC 014 - Watches |
| BALLON BLEU | 3,476,888 | July 29, 2008 | IC 014 - Watches, Chronometers, Clocks |
| Cartier | 4,178,047 | July 24, 2012 | IC 014 - Jewelry and watches |

**IWC Schaffhausen Trademarks**

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| IWC | 1,205,403 | August 17, 1982 | IC 014 - Watches |
| PORTOFINO | 1,846,680 | July 26, 1994 | IC 014 – Watches and parts therefore |
| IWC SCHAFFHAUSEN | 4,270,382 | January 8, 2013 | IC 014 - Watches, chronometers, clocks; straps for wristwatches, boxes of precious metal for watches and all the aforementioned goods from Switzerland |
| IWC | 4,322,600 | April 23, 2013 | IC 014 - Watches, chronometers, clocks, watch bands, boxes of precious metal for watches |
| PORTUGIESER | 4,412,785 | October 8, 2013 | IC 014 - Watches, chronometers, clocks, watch straps, watch bracelets, and boxes of precious metals for watches |

7

**Panerai Trademarks**

| Registered Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| PANERAI | 2,340,290 | April 11, 2000 | IC 014 - Chronometers, watches |
| LUMINOR | 2,516,018 | December 11, 2001 | IC 014 - Chronometers, watches and clocks |
| OFFICINE PANERAI | 4,009,035 | August 9, 2011 | IC 014 - Watches and clocks; watch accessories, namely, watch straps, and buckles for watch bands and watch straps. |
| LUMINOR MARINA | 5,763,549 | May 28, 2019 | IC 014 - Chronometers; watches |
| PANERAI SUBMERSIBLE | 5,848,650 | September 3, 2019 | IC 014 - Chronometers; watches and clocks; watch movements; watch straps; watch bracelets; presentation boxes for watches; cases adapted for holding watches |

**Vacheron Constantin Trademarks**

| Registered Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| ✠ VACHERON CONSTANTIN | 3,114,414 | July 11, 2006 | IC 014 - Cuff links; watches, chronometers, clocks, watchstraps, cases of precious metal for watches and jewellery |
| VACHERON CONSTANTIN | 5,630,166 | December 18, 2018 | IC 014 - Jewelry; Cuff links; Tie clips; Jewelry in the nature of rings, bracelets, earrings, necklaces and brooches; Timepieces in the nature of clocks; Dials for clock and watch making; Key rings of precious metal; Timepieces and chronometric instruments; Watches; Chronometers; Cases adapted for holding watches; Movements for timepieces in the nature of clocks and watches; Alarm clocks; Watch bands; Boxes of precious metal |

**Van Cleef & Arpels Trademarks**

| Registered Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| Van Cleef & Arpels | 1,415,794 | November 4, 1986 | IC 014 - Jewelry and Watches |
| VCA | 1,584,572 | February 27, 1990 | IC 014 – Jewelry |
| VC A | 2,692,672 | March 4, 2003 | IC 014 – Jewelry; Watches |
| ALHAMBRA | 2,751,878 | August 19, 2003 | IC 014 - Precious Metal And Their Alloys And Products Made Thereof Or Coated Therewith Not Included In Other Classes, Namely, Jewelry, Horological And Chronometric Instruments, Namely, Watches And Watch Bracelets And  Necklaces, Jewelry Chains Of Precious Metal, Earrings, Jewelry Rings, Pendants, Ankle Bracelets, Cuff Links, Studs Made Of Precious Metal |
| VAN CLEEF & ARPELS | 2,936,247 | March 29, 2005 | IC 014 - Items Made Of Precious Metal, Namely, Rings, Bracelets, Earrings, Necklaces, Pendants, Charms, Brooches, Clips, Hairclips, Jewelry Boxes, Jewelry Cases, Watch Bracelets And Buckles; Jewelry, Watches And Clocks |
| ALHAMBRA | 3,489,019 | August 19, 2008 | IC 014 - Jewelry; Clock And Watch Making, Namely, Watches, Watch Bracelets |

Plaintiff's Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. True and correct copies of the Certificates of Registration for Plaintiff's Marks are attached hereto as Composite Exhibit "1."

9

17.    Plaintiff's Marks have been used in interstate commerce to identify and distinguish Plaintiff's high-quality goods for an extended period of time.

18.    Plaintiff's Marks have been used in commerce by Plaintiff long prior in time to Defendants' use of copies of those Marks. Plaintiff's Marks have never been assigned or licensed to any Defendant in this matter.

19.    Plaintiff's Marks are symbols of Plaintiff's quality, reputation and goodwill and have never been abandoned. Plaintiff has carefully monitored and policed the use of Plaintiff's Marks.

20.    Plaintiff's Marks are well known and famous and have been for many years. Plaintiff expends substantial resources developing, advertising and otherwise promoting Plaintiff's Marks and products bearing and/or using Plaintiff's Marks. Plaintiff's Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

21.    Plaintiff extensively uses, advertises and promotes Plaintiff's Marks in the United States in association with the sale of high-quality goods.

22.    As a result of Plaintiff's efforts, Plaintiff's Marks have acquired fame in the consumer market for a wide variety of products.

23.    Plaintiff's Marks are among the most widely recognized trademarks in the United States, and the trademarks have achieved secondary meaning as an identifier of high-quality goods.

24.    Genuine goods bearing and/or using Plaintiff's Marks are widely legitimately advertised and promoted by Plaintiff, its authorized distributors, and unrelated third parties via the Internet.  Visibility on the Internet, particularly via Internet search engines and social media platforms, is important to Plaintiff's overall marketing and consumer education efforts. Thus, Plaintiff expends significant monetary and other resources on Internet marketing and consumer

10

education regarding its products, including search engine optimization, search engine marketing, and social media strategies. Those strategies allow Plaintiff and its authorized retailers to educate consumers fairly and legitimately about the value associated with Plaintiff's brand, the goods sold thereunder, and the problems associated with the counterfeiting of Plaintiff's trademarks. Similarly, many of the e-commerce stores are indexed on search engines and compete directly with Plaintiff for space and consumer attention in the search results.

**Defendants' Infringing Activities**

25.     Defendants are each promoting, advertising, distributing, offering for sale, and/or selling goods in interstate commerce bearing and/or using counterfeit and confusingly similar imitations of one or more of Plaintiff's Marks (the "Counterfeit Goods") through at least the Internet based e-commerce stores operating under the E-commerce Store Names. Specifically, Defendants are each using Plaintiff's Marks to initially attract online consumers and drive them to Defendants' e-commerce stores operating under the E-commerce Store Names. Defendants are each using virtually identical copies of one or more of Plaintiff's Marks for different quality goods. Plaintiff has used its trademarks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiff's products.

26.     Defendants' Counterfeit Goods are of a quality substantially different than that of Plaintiff's genuine goods. Defendants are actively using, promoting and otherwise advertising, distributing, offering for sale and/or selling substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality goods offered for sale by Plaintiff despite Defendants' knowledge that they are without authority to use Plaintiff's Marks.  Defendants' actions are likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods offered

11

for sale in or through Defendants' e-commerce stores are genuine goods originating from, associated with, and/or approved by Plaintiff.

27.     Defendants advertise their e-commerce stores, including their Counterfeit Goods offered for sale, to the consuming public via e-commerce stores using, at least, the E-commerce Store Names. In so doing, Defendants improperly and unlawfully use one or more of Plaintiff's Marks without Plaintiff's permission.

28.     Defendants are concurrently employing and benefiting from substantially similar advertising and marketing strategies based, in large measure, upon an unauthorized use of counterfeits and infringements of Plaintiff's Marks. Specifically, Defendants are using counterfeits and infringements of Plaintiff's famous name and Plaintiff's Marks to make their e-commerce stores selling unauthorized goods appear more relevant and attractive to consumers searching for both Plaintiff's and non-Plaintiff's goods and information online. By their actions, Defendants are jointly contributing to the creation and maintenance of an unlawful marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods. Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space online and within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with Plaintiff's Marks by viewing inferior products in either the pre or post sale setting, and/or, (iii) increasing Plaintiff's overall cost to market its goods and educate consumers about its brand via the Internet.

29.     Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and

12

elsewhere throughout the United States.  As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

30.     At all times relevant hereto, Defendants have had full knowledge of Plaintiff's ownership of Plaintiff's Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

31.     Defendants' use of Plaintiff's Marks, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiff's consent or authorization.

32.     Defendants are engaging in the above-described unlawful counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading on Plaintiff's goodwill and reputation.  If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

33.     Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive consumers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods and Defendants' Counterfeit Goods, which there is not.

34.     Given the visibility of Defendants' various e-commerce stores and the similarity of their concurrent actions, it is clear Defendants are either affiliated, or at a minimum, cannot help but know of each other's existence and the unified harm likely to be caused to Plaintiff and the overall consumer market in which they operate because of Defendants' concurrent actions.

35. Although some Defendants may be physically acting independently, they may properly be deemed to be acting in concert because the combined force of their actions serves to multiply the harm caused to Plaintiff.

36. Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule "A," are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing and unfairly competitive activities connected to their E-commerce Store Names and any other alias e-commerce store names being used and/or controlled by them.

37. Further, Defendants, upon information and belief, are likely to transfer or secrete their assets to avoid payment of any monetary judgment awarded to Plaintiff.

38. Plaintiff has no adequate remedy at law.

39. Plaintiff is suffering irreparable injury and has suffered substantial damages because of Defendants' unauthorized and wrongful use of Plaintiff's Marks. If Defendants' intentional counterfeiting and infringing and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed while Defendants wrongfully earn a substantial profit.

40. The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

## COUNT I – TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

41. Plaintiff hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 40 above.

42.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of Plaintiff's Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale, and/or sale of the Counterfeit Goods.

43.     Defendants are promoting and otherwise advertising, selling, offering for sale, and/or distributing goods bearing and/or using counterfeits and/or infringements of one or more of Plaintiff's Marks. Defendants are continuously infringing and inducing others to infringe Plaintiff's Marks by using one or more of Plaintiff's Marks to advertise, promote, offer to sell, and/or sell counterfeit and infringing versions of Plaintiff's branded goods.

44.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

45.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages and irreparable harm to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

46.     Defendants' above-described unlawful actions constitute counterfeiting and infringement of Plaintiff's Marks in violation of Plaintiff's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

47.     Plaintiff has suffered and will continue to suffer irreparable injury and damages while Defendants are earning a substantial profit due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined.

15

**COUNT II – FALSE DESIGNATION OF ORIGIN**
**PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))**

48.     Plaintiff hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 40 above.

49.     Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of one or more of Plaintiff's Marks have been widely advertised and offered for sale throughout the United States via the Internet.

50.     Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of one or more of Plaintiff's Marks are virtually identical in appearance to Plaintiff's genuine goods. However, Defendants' Counterfeit Goods are different in quality. Accordingly, Defendants' activities are likely to cause confusion among consumers as to at least the origin or sponsorship of their Counterfeit Goods.

51.     Defendants have used in connection with their advertisement, offers for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and designs that falsely describe or represent such goods and have caused such goods to enter into commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

52.     Defendants have each authorized infringing uses of one or more of Plaintiff's Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods.

53.      Additionally, Defendants are simultaneously using counterfeits and infringements of one or more of Plaintiff's Marks to unfairly compete with Plaintiff and others for space within organic and paid search engine and social media results. Defendants are thereby jointly (i)

16

depriving Plaintiff of valuable marketing and educational space online which would otherwise be available to Plaintiff, and (ii) reducing the visibility of Plaintiff's genuine goods on the World Wide Web and across social media platforms.

54.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

55.     Plaintiff has no adequate remedy at law and has sustained both individual and indivisible injury and damages caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages, while Defendants are earning a substantial profit.

### COUNT III – COMMON LAW UNFAIR COMPETITION

56.     Plaintiff hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 40 above.

57.     This is an action against Defendants based on their promotion, advertisement, distribution, offering for sale, and/or sale of goods bearing and/or using marks that are virtually identical to one or more of Plaintiff's Marks in violation of Florida's common law of unfair competition.

58.     Specifically, Defendants are each promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and infringements of one or more of Plaintiff's Marks. Defendants are also each using counterfeits and infringements of one or more of Plaintiff's Marks to unfairly compete with Plaintiff and others for (i) space in search engine and social media results across an array of search terms and (ii) visibility on the World Wide Web.

59.     Defendants' infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendants' e-commerce stores as a whole and all products sold therein by their use of Plaintiff's Marks.

60.     Plaintiff has no adequate remedy at law and has suffered and will continue to suffer irreparable injury and damages because of Defendants' concurrent actions while Defendants are unjustly profiting due to their above-described activities if Defendants are not preliminarily and permanently enjoined.

### <u>COUNT IV – COMMON LAW TRADEMARK INFRINGEMENT</u>

61.     Plaintiff hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 40 above.

62.     Plaintiff is the owner of all common law rights in and to Plaintiff's Marks.

63.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing and/or using one or more of Plaintiff's Marks.

64.     Specifically, each Defendant is promoting and otherwise advertising, distributing, offering for sale, and selling goods bearing and/or using infringements of one or more of Plaintiff's Marks.

65.     Defendants' infringing activities are likely to cause and are causing confusion, mistake and deception among consumers as to the origin and quality of Defendants' Counterfeit Goods bearing and/or using Plaintiff's Marks.

66.     Plaintiff has no adequate remedy at law and has suffered and will continue to suffer irreparable injury and damages because of Defendants' concurrent actions while Defendants are

unjustly profiting due to their above-described activities if Defendants are not preliminarily and permanently enjoined.

## PRAYER FOR RELIEF

67.    WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a.    Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting Plaintiff's Marks; from using Plaintiff's Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely representing themselves as being connected with Plaintiff, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Plaintiff; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of Plaintiff's Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiff, or in any way endorsed by Plaintiff and from

19

offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiff's name or trademarks and from otherwise unfairly competing with Plaintiff.

b.     Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority enjoining Defendants and all third parties with actual notice of an injunction issued by the Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits and/or infringements of Plaintiff's Marks.

c.     Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that upon Plaintiff's request, those acting in concert or participation as service providers to Defendants, who have notice of the injunction, shall disable and/or cease hosting, facilitating access to, or providing any supporting service to any and all e-commerce stores, including but not limited to the E-commerce Store Names, through which Defendants engage in the promotion, offering for sale and/or sale of goods bearing and/or using counterfeits and/or infringements of Plaintiff's Marks.

d.     Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, any Internet marketplace website operators, administrators, registrars, and/or top level domain (TLD) Registries for the E-commerce Store Names and any other alias e-commerce store names being used by Defendants who are provided with notice of an injunction issued by the Court, identify any e-mail address known to be associated with Defendants' E-commerce Store Names.

20

e.       Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. §1651(a), The All Writs Act, and the Court's inherent authority that upon Plaintiff's request, the Defendants and the top level domain (TLD) Registry for each of the E-commerce Store Names, or their administrators, including backend registry operators or administrators, place the E-commerce Store Names, and any other e-commerce store names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing and/or using counterfeits and infringements of Plaintiff's Marks, on Registry Hold status for the remainder of the registration period for any such e-commerce store, thus removing them from the TLD zone files that link the E-commerce Store Names, and any other e-commerce store names used by Defendants to the IP addresses where the associated e-commerce store names are hosted.

f.       Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority canceling for the life of the current registration or, at Plaintiff's election, transferring the E-commerce Store Names and any other e-commerce store names used by Defendants to engage in their counterfeiting of Plaintiff's Marks to Plaintiff's control so they may no longer be used for unlawful purposes.

g.       Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and the Court's inherent authority authorizing Plaintiff to request any Internet search engines or service provider referring or linking users to any Uniform Resource Locator ("URL") of the E-commerce Store Names, which are provided with notice of the order, to permanently disable, de-index or delist all URLs of the E-commerce Store Names and/or permanently disable the references or links to all URLs of the E-commerce Store Names used by Defendants to promote, offer for sale and/or sell goods bearing and/or using counterfeits and/or infringements of Plaintiff's Marks, based upon

Defendants' unlawful activities being conducted via the E-commerce Store Names as a whole and via any specific URLs identified by Plaintiff.

h.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s) to assign all rights, title, and interest, to their E-commerce Store Names, and any other e-commerce store names used by Defendants, to Plaintiff and, if within five (5) days of entry of such order Defendants fail to make such an assignment, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

i.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s) to instruct in writing all search engines to permanently delist or deindex the E-commerce Store Names, any other e-commerce store names used by Defendants, and, if within five (5) days of entry of such order Defendants fail to make such a written instruction, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

j.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s) to instruct the Registrar for each E-commerce Store Name in writing to permanently close the registration account(s) in which any E-commerce Store Name is located and, if within five (5) days of entry of such Order Defendants fail to make such a written instruction, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

22

k.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, any messaging service and Internet marketplace and website operators and/or administrators who are provided with notice of an injunction issued by the Court, permanently remove any and all listings and associated images of goods bearing and/or using counterfeits and/or infringements of Plaintiff's Marks via the e-commerce stores operating under the E-commerce Store Names, and upon Plaintiff's request, any other listings and images of goods bearing and/or using counterfeits and/or infringements of Plaintiff's Marks associated with or linked to the same sellers or linked to any other e-commerce store names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing and/or using counterfeits and/or infringements of Plaintiff's Marks.

l.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and the Court's inherent authority that, upon Plaintiff's request, Defendants and any Internet platform or marketplace website operators and/or administrators of the E-commerce Store Names who are provided with notice of an injunction issued by the Court, immediately cease fulfillment of and sequester all goods of each Defendant bearing and/or using one or more of Plaintiff's Marks in its inventory, possession, custody, or control, and surrender those goods to Plaintiff.

m.      Entry of an order requiring, upon Plaintiff's request, Defendants to request in writing permanent termination of any messaging services, E-commerce Store Names, usernames, e-commerce stores, and social media accounts they own, operate, or control on any messaging service, e-commerce marketplace, or social media website.

n.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Plaintiff to serve an injunction issued by the Court on any

23

e-mail service provider with a request that the service provider permanently suspend the e-mail addresses that are used by Defendants in connection with Defendants' promotion, offering for sale, and/or sale of goods bearing and/or using counterfeits and/or infringements of Plaintiff's Marks.

o.　　Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority authorizing Plaintiff to serve the injunction on the e-commerce store's registrar(s) and/or the privacy protection service(s) for the E-commerce Store Names to disclose to Plaintiff the true identities and contact information for the registrants of the E-commerce Store Names.

p.　　Entry of an order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C. §1117, or that Plaintiff be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product type offered for sale or sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

q.　　Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiff's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

r.　　Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and the Court's inherent authority that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, e-commerce shipping partner, fulfillment center, warehouse, storage facility, or marketplace platforms, and their related companies and affiliates, identify, restrain, and be required to surrender to Plaintiff all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the E-commerce Store Names or

any other alias e-commerce store names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), and remain restrained until such funds are surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

s.      Entry of an order requiring Defendants, at Plaintiff's request, to pay the cost necessary to correct any erroneous impression the consuming public may have received or derived concerning the nature, characteristics, or qualities of Defendants' products, including without limitation, the placement of corrective advertising and providing written notice to the public.

t.      Entry of an award of pre-judgment interest on the judgment amount.

u.      Entry of an order for any further relief as the Court may deem just and proper.

DATED: July 14, 2025.                   Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By:   **Stephen M. Gaffigan**
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Wiborg-Rodriguez (Fla. Bar. No. 103372)
401 East Las Olas Blvd., # 130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
E-mail: Stephen@smgpa.cloud
E-mail: Leo@smgpa.cloud
E-mail: Raquel@smgpa.cloud

Attorneys for Plaintiff

25

## SCHEDULE "A"

**[This page is the subject of Plaintiff's Motion to File Under Seal.  As such, this page has been redacted in accordance with L.R. 5.4(b)(1)]**

26